UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL INJURY CENTERS, LLC, and
OWCP AR and RECOVERY
SPECIALISTS, LLC,

     Plaintiff,

v.

RESTORE MUSCLE AND JOINT SL,
LLC, RESTORE MUSCLE AND JOINT,
LLC, TROY PEARSON, individually,
KENDRA PEARSON, individually, ERIC
NEPUTE, individually, and JODEE
NEPUTE, individually,

     Defendants.

Case No.:

## COMPLAINT FOR INJUNCTIVE RELIEF
## AND DAMAGES AND DEMAND FOR JURY TRIAL

COME NOW, the Plaintiffs, FEDERAL INJURY CENTERS, PLLC ("FIC")

and OWCP AR and RECOVERY SPECIALISTS, LLC ("OWCP AR"), by and through

undersigned counsel, hereby sue the Defendants, RESTORE MUSCLE AND

JOINT SL, LLC ("RESTORE ST. LOUIS"), RESTORE MUSCLE AND JOINT, LLC

("RESTORE KANSAS CITY"), TROY PEARSON ("T. PEARSON" or "Guarantor"),

KENDRA PEARSON ("K. PEARSON") (collectively, the "PEARSON Defendants"),

ERIC NEPUTE ("E. NEPUTE"), and JODEE NEPUTE ("J. NEPUTE") (collectively

the "NEPUTE Defendants") and in support thereof state the following:

1

## I.    PARTIES, JURISDICTION AND VENUE

1.    Plaintiff FIC is a limited liability company formed under the laws of the State of Florida, with its principal offices located in the Middle District of Florida, and is owned by Chris Helms, a citizen of the state of Florida, Joe Giampa, a citizen of the state of Tennessee, and Tom Giampa, a citizen of the state of Ohio.

2.    Plaintiff OWCP AR is a limited liability company formed under the laws of the State of Florida, with its principal offices located in the Middle District of Florida, and is owned by Chris Helms, a citizen of the state of Florida, Joe Giampa, a citizen of the state of Tennessee, and Tom Giampa, a citizen of the state of Ohio.

3.    Upon information and belief, TROY PEARSON was and is a resident and citizen of the state of Missouri.

4.    Upon information and belief, KENDRA PEARSON was and is a resident and citizen of the state of Missouri and is married to TROY PEARSON.

5.    Upon information and belief, ERIC NEPUTE was and is a resident and citizen of the state of Missouri.

6.    Upon information and belief, JODEE PEARSON was and is a resident and citizen of the state of Missouri and is married to ERIC NEPUTE.

7.    Upon information and belief, Defendant RESTORE MUSCLE AND JOINT SL, LLC, ("RESTORE ST. LOUIS") was and is a Missouri limited liability company with its principal place of business at 4225 Bayless Avenue, St. Louis MO, is owned by Defendants TROY PEARSON and KENDRA PEARSON, and

Defendants ERIC NEPUTE and JODI NEPUTE.

8.    Upon information and belief, Defendant RESTORE MUSCLE AND JOINT, LLC ("RESTORE KANSAS CITY") was and is a Missouri limited liability company with its principal place of business located at 4119 NW Barry Road, Kansas City, MO 64154 and is owned by Defendants TROY PEARSON and KENDRA PEARSON.

9.    This court has subject matter jurisdiction under 28 U.S.C. 1332 because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

10.    In addition, this court has subject matter jurisdiction under 28 U.S.C. 1331 (federal question).

11.    This Court has personal jurisdiction over Defendants because they submitted to personal jurisdiction in forum selection clauses in the Franchise Agreements and the Guarantee and Non-compete Agreements.

12.    This Court also has personal jurisdiction over the Defendants under Florida's Long Arm Statute because Defendants breached contracts in this state by failing to make required payments to Plaintiffs and breaching post-termination restrictive covenants and guarantee obligations.

13.    Venue is proper under 28 U.S.C. §1391(2) because Plaintiffs have their principal offices within the Middle District of Florida, which is also the site of a substantial part of the events giving rise to the claims asserted, and because all of the damages Defendants have caused to Plaintiffs occurred within this District;

and because the franchise agreements and guarantee and non-compete agreements Defendants signed provide that Defendants consent to venue where Plaintiffs have their principal headquarters, and they waived objection to venue in this District.

## II.    THE AGREEMENTS:

14.    Plaintiff FIC operates a franchise offering a system and training for franchisees to develop and operate medical clinics focused upon serving injured federal workers with claims covered by the Department of Labor's Office of Worker's Compensation Program ("OWCP").

15.    Plaintiff OWCP AR is a medical services billing and collection business, under common ownership with Plaintiff FIC and serves as a billing and collection vendor for FIC's franchisees, including both of the FRANCHISES.

16.    On or about November 15, 2022, Plaintiffs FIC and OWCP AR entered a written franchise agreement with Defendant RESTORE KANSAS CITY ("Kansas City Franchise Agreement"), to open a franchised location at 4119 NW Barry Road, Kansas City, MO 64154. A copy of the Kansas City Franchise Agreement is attached as Exhibit "A."

17.    On or about November 15, 2022, Plaintiff FIC entered a written guaranty and non-compete agreement with the PEARSON Defendants in connection with the Kansas City Franchise Agreement ("Kansas City Guaranty Agreement"). A copy of the Kansas City Guaranty Agreement is attached as Exhibit "B."

18.    On or about October 7, 2024, Plaintiffs FIC and OWCP AR entered a written franchise agreement with Defendant RESTORE ST. LOUIS to open a franchised location at 4225 Bayless Avenue, St., St. Louis, MO 63123 ("St. Louis Franchise Agreement). A copy of the St. Louis Franchise Agreement is attached as Exhibit "C."

19.    On or about October 7, 2024, Plaintiff FIC entered a written guaranty and non-compete agreement with the PEARSON Defendants and the NEPUTE Defendants in connection with the St. Louis Franchise Agreement (St. Louis Guaranty Agreement"). A copy of the St. Louis Guaranty Agreement is attached as Exhibit "D."

## III.    NOTICE OF BREACH AND TERMINATION

20.    On July 29, 2025, FIC issued a notice of default to Defendants RESTORE KANSAS CITY and RESTORE ST. LOUIS for failure to pay Royalty Fees and Billing Fees, providing a 90-day period to November 3, 2025 to cure that default. ("FIC July 29, 2025 Notice of Default). A copy of the FIC July 29, 2025 Notice of Default is attached as Exhibit "E."

21.    Prior to July 29, 2025, Defendants used FIC's confidential information and intellectual property to develop an AI-based software, referred to as an OWCP Wizard, to perform various tasks related to operation of a medical clinic serving injured federal workers covered under the Department of Labor's Office of Worker's Compensation Program.

22.     Prior to July 29, 2025 Defendants opened at least one additional OWCP medical practice that directly competed against FIC and its franchisees, in violation of the franchise agreements' covenants against competition.

23.     On July 29, 2025 FIC also issued a separate Notice to Cease and Desist; Cancellation of License and Use of Intellectual Property and Confidential Information to Defendants (hereafter "FIC's July 29, 2025 Cease and Desist Notice"), placing Defendants on notice of their breaches of various provisions in the franchise agreements against competition, and directing them to assign all rights to any innovations over to FIC, and directing them to cease and desist. A copy of FIC's July 29, 2025 Cease and Desist Notice is attached as Exhibit "F."

24.     Defendants RESTORE ST. LOUIS and RESTORE KANSAS CITY failed to timely cure or attempt to cure their breaches as described in the FIC July 29, 2025 Notice of Breach and the FIC July 29, 2025 Cease and Desist Notice.

25.     On November 5, 2025, FIC provided Defendants with written Notices of Termination of their franchises for failure to cure their breaches for non-payment of Royalty Fees. ("FIC November 5, 2025 Termination Notice to Restore St. Louis" and "FIC November 5, 2025 Termination Notice to Restore Kansas City", attached respectively as Exhibits "G" and "H").

26.     Upon information and belief, either or all RESTORE KANSAS CITY and/or RESTORE ST. LOUIS, and/or the Pearson Defendants continue to operate both the previously franchised locations and at least one new location, all using Plaintiff FIC's Confidential Information and Know-How in blatant violation of the

6

Franchise Agreements, the Guaranty Agreements and the restrictive covenants contained therein; and continue to use the innovations developed using FIC's confidential information.

## COUNT I –
## BREACH OF CONTRACT WITH FIC AND OWCP AR
## (Against RESTORE ST. LOUIS)

27.    Plaintiffs FIC repeats and realleges each and every material allegation set forth in Paragraphs 1 through 26 above and incorporates the same by reference.

28.    RESTORE ST. LOUIS is a former franchisee of Plaintiff's Federal Injury Centers franchise system, and operated one franchised location at 4225 Bayless Avenue, St. Louis, MO 63123 under the St. Louis Franchise Agreement, signed October 31, 2024.

29.    The St. Louis Billing Agreement, attached to the St. Louis Franchise Agreement was unsigned, but OWCP AR and RESTORE ST. LOUIS both performed under the St. Louis Billing Agreement.

30.    RESTORE ST. LOUIS breached the St. Louis Franchise Agreement and the St. Louis Billing Agreement by failing to make required royalty payments and billing payments and failing to cure those material breaches after receipt of notice of default.

31.    Plaintiffs FIC and OWCP AR have performed every obligation and condition required under the St. Louis Franchise Agreement and the St. Louis Billing Agreement.

32.     On November 3, 2025, Plaintiff FIC properly terminated the RESTORE ST. LOUIS's franchise agreement and billing agreement for failure to pay amounts due thereunder.

33.     Pursuant to Section 16.C of the RESTORE ST. LOUIS Franchise Agreement, upon termination, Defendant RESTORE ST. LOUIS became liable for payment to FIC for all monies owed under the agreement, including unpaid Royalty Fees and Billing Fees, and all lost revenues, profits, that would have been paid to FIC had a breach not occurred.

34.     Paragraph 16.C (3) of the ST. LOUIS Franchise Agreement provided for liquidated damages for lost royalty fees and billing fees and other revenues by using RESTORE ST. LOUIS's most recent calendar year of Federal Workers Comp Collections to determine Plaintiffs' lost damages.

35.     Defendant RESTORE ST. LOUIS had average Federal Workers Comp Collections of $11,830.50 per week during its most recent calendar year.

36.     Defendant RESTORE ST. LOUIS's franchise agreement was terminated on November 3, 2025. At that time there were 517 weeks remaining in its ten-year term.

37.     Defendant RESTORE ST. LOUIS' Royalty Fee was 8.5% of all Federal Workers Comp Collections.

38.     Defendant RESTORE ST. LOUIS is therefore liable to FIC for payment of the liquidated damages in the amount equal to the average collections of $11,830.50 multiplied by the Royalty Rate of 8.5% multiplied by the remaining 517

8

weeks in its ten-year term, or the total sum of $519,891.32 as liquidated damages.

39.    Defendant RESTORE ST. LOUIS' Billing Fee with OWCP AR was 6.5% of all Federal Workers Comp Collections.

40.    Defendant RESTORE ST. LOUIS is therefore liable to OWCP AR for payment of the liquidated damages in the amount equal to the average collections of $11,830.50 multiplied by the Royalty Rate of 6.5% multiplied by the remaining 517 weeks in its ten-year term, or the total sum of $397,563.95 as liquidated damages.

41.    Defendant RESTORE ST. LOUIS was also obligated to comply with in-term and post-termination provisions of the RESTORE ST. LOUIS Franchise Agreement pursuant to Article 6.

42.    Upon information and belief, Defendant RESTORE ST. LOUIS violated its restrictive covenant against competition during the term of its franchise agreement by continuing to operate its franchised location and also opening and operating at least one new OWCP medical clinics in Colorado and Texas.

43.    Upon information and belief, Defendant RESTORE ST. LOUIS is in violation of its post-termination restrictive covenants, and is continuing to operate its former franchised location, using Plaintiff FIC's confidential information and training, in addition to at least one other OWCP medical clinic in Colorado.

44.    Plaintiff has a legitimate business interest to enforce post-termination restrictive covenants against RESTORE ST. LOUIS, including the following:

a.  Protection of the goodwill associated with FIC's brand and trademarks;

b.  Protection of FIC's trade secrets and confidential information that may not otherwise qualify as trade secrets;

c.  The extraordinary and specialized training FIC provided to RESTORE ST. LOUIS;

d.  The loss of goodwill of existing and future patients and referral sources;

e.  The loss of the business opportunity for Plaintiff FIC to place a different, new franchisee in the same market or location; and

f.  The loss of franchisee stability, in that Defendant RESTORE ST. LOUIS's effort to terminate its franchise agreement with Plaintiff FIC and compete against it may induce or encourage other franchisees to follow suit or may discourage new franchisees from joining the franchise system.

45.    The restrictive covenants in RESTORE ST. LOUIS's Franchise Agreement are reasonably necessary to protect FIC's legitimate business interests. An inability to enforce reasonable post-termination restrictive covenants would enable franchisees to learn and benefit from all of FIC's trade secrets, confidential information, Know-How and specialized training, then terminate the franchise agreement and essentially "steal" FIC's entire business model and system without paying fair or agreed upon compensation to FIC for the use and benefit of that

business model and system.

46.    Upon information and belief, RESTORE ST. LOUIS is further in violation of its post termination covenant to cease use of, and maintain confidentiality of FIC's "Know-How" and "Confidential Information", as defined in the franchise agreement by continuing to use FIC's Know-How to operate its former franchised location, and the additional OWCP medical clinics it has opened.

47.    Defendant RESTORE ST. LOUIS has failed to comply with other post-termination obligations set forth in Article 17 of the St. Louis Franchise Agreement, including but not limited to:

a.    Return to FIC the Operations Manual, all Confidential Information, and cease accessing them; and

b.    Assign to FIC Defendant's business management system, its data, patient lists and information, all telephone numbers, email addresses or directory listings, web-based media listings and log-in information used in connection with Defendant's operation of the franchised clinic.

48.    Defendant RESTORE ST. LOUIS's unlawful competition, use and disclosure of FIC Know-How and Confidential Information will cause Plaintiff to suffer additional monetary damages, in an amount to be determined at trial.

49.    Defendant RESTORE ST. LOUIS has not complied with any of its post-termination obligations, and upon information and belief, continues to

operate out of the same location and at least one new location, violating the post termination restrictive covenant against competition.

50.    This unlawful competition has caused, and will cause Plaintiff to suffer additional monetary damages, cause irreparable harm to its goodwill, reputation and brand, as well as to the value of its confidential information, and harms the franchise system as a whole by competing with, and diverting business and potential business from other franchisees of the Federal Injury Centers franchise system, and makes it more difficult for Plaintiff FIC to start a new franchised business in that same location or near it.

51.    FIC has retained the Gegan Law Office, PLLC to represent it in this action and is entitled to recover reasonable attorneys' fees and litigation costs to the full extent allowed under the law.

Wherefore, Plaintiff FIC seeks monetary damages in the sum of $917,455.27 as liquidated damages; an amount to be determined at trial for damages, including disgorgement of revenues and profits resulting from violation of in-term and post-termination restrictive covenants, including use and disclosure of confidential information; and injunctive relief, including preliminary injunctive relief requiring Defendant RESTORE ST. LOUIS to comply with its post-termination obligations, including the restrictive covenants against competition and assignment of intellectual property, together with costs and attorneys' fees.

## COUNT II
### BREACH OF PERSONAL GUARANTY AND NON-COMPETE WITH FIC ON THE ST. LOUIS FRANCHISE AGREEMENT (Against the Pearson Defendants and Nepute Defendants)

52.     Plaintiff FIC repeats and realleges each and every material allegation set forth in Paragraphs 1 through 26 above and incorporates the same by reference.

53.     From October 7 through October 30, 2024, Defendants TROY PEARSON, KENDRA PEARSON, ERIC NEPUTE and JODEE NEPUTE (collectively "Individual Guarantors") executed the Franchise Owners and Spouse Agreement and Guaranty (hereinafter "St. Louis Guaranty Agreement").

54.     The St. Louis Guaranty Agreement provides that Individual Guarantors were equity owners or spouses in RESTORE ST. LOUIS and were executing the Guaranty to induce Plaintiff to enter into the St. Louis Franchise Agreement.

55.     The St. Louis Guaranty Agreement provides that the Individual Guarantors unconditionally guaranteed that RESTORE ST. LOUIS shall pay all of its payments and other obligations under the St. Louis Franchise Agreement, and that the Individual Guarantors shall be personally bound and liable for such payments.

56.     The St. Louis Guaranty Agreement provides that the Individual Guarantors will not use FIC's Know-How or Intellectual Property other than in in the franchised business and shall prevent unauthorized disclosure of the Know-

How.

57.    The St. Louis Guaranty Agreement provides that the Individual Guarantors will not engage in any Prohibited Activities, which includes having an interest in, or operating any competitive business, or diverting or attempting to divert any business or patients from FIC or one of its franchisees.

58.    The St. Louis Guaranty Agreement provides that during any restricted period (as defined therein) after the Franchise Agreement is terminated, the Individual Guarantors shall not engage in any Prohibited Activities, which includes having an ownership interest in, or operating any competitive business within the specified restricted territory (as defined therein).

59.    Upon information and belief, Defendant Individual Guarantors are still operating from the same location, and Individual Guarantors still have an ownership interest in RESTORE ST LOUIS, in violation of the St. Louis Guaranty Agreement.

60.    Upon information and belief, one or more of the Individual Guarantors have an ownership interest in, or operate at least one other competitive businesses, and owns and sells access to software based upon FIC's intellectual property, all in violation of the St. Louis Guaranty Agreement.

61.    The Guaranty Agreement further provides that Individual Guarantors shall pay to Plaintiff all costs and attorney fees incurred in enforcing the agreement.

62.     Plaintiff FIC has been damaged by the Individual Guarantors' breach of the St. Louis Guaranty Agreement in a sum to be determined at trial.

63.     FIC has retained the Gegan Law Office, PLLC to represent it in this action and is entitled to recover reasonable attorneys' fees and litigation costs to the full extent allowed under the law.

Wherefore, Plaintiff FIC seeks monetary damages in an amount to be determined at trial and injunctive relief, including preliminary injunctive relief requiring Defendants TROY PEARSON, KENDRA PEARSON, ERIC NEPUTE and JODEE NEPUTE to comply with their post-termination obligations, including the restrictive covenants against competition, together with costs and attorneys' fees.

## COUNT III
## BREACH OF CONTRACT WITH FIC AND OWCP AR
### (Against RESTORE KANSAS CITY)

64.     Plaintiff FIC and OWCP AR repeat and reallege each and every material allegation set forth in Paragraphs 1 through 26 above and incorporates the same by reference.

65.     RESTORE KANSAS CITY is a former franchisee of Plaintiff's Federal Injury Centers franchise system, and operated one franchised location at 4119 NW Barry Road, Kansas City, MO 64154 under the Kansas City Franchise Agreement, signed November 15, 2022.

66.     On November 15, 2022 RESTORE KANSAS CITY executed the Kansas City Franchise Agreement with Plaintiff OWCP AR.

67.     There was no written billing agreement between RESTORE KANSAS CITY and OWCP AR, but both parties performed as if there were.

68.     RESTORE KANSAS CITY breached the Kansas City Franchise Agreement by failing to make required royalty payments under the franchise agreement and failing to cure those material breaches after receipt of notice of default.

69.     Plaintiffs FIC performed every obligation and condition required under the Kansas City Franchise Agreement.

70.     On November 3, 2025, Plaintiffs properly terminated the Kansas City Franchise Agreement for failure to pay amounts due thereunder.

71.     Pursuant to Section 14.3 of the Kansas City Franchise Agreement, upon termination, Defendant RESTORE KANSAS CITY became liable for payment to FIC for all monies owed under the agreement through the effective date of termination.

72.     Pursuant to Section 14.5 of the RESTORE KANSAS CITY Franchise Agreement, upon termination, Defendant RESTORE KANSAS CITY became liable for liquidated damages equal to the average Royalty Fees during the 52-week period prior to when Defendant ceased doing business, multiplied by the lesser of 104 or the remaining number of weeks in the franchise agreement.

73.     Upon information and belief, Defendant RESTORE KANSAS CITY had average Gross Sales of $11,830.50 per week.

74.     Defendant RESTORE KANSAS CITY's franchise agreement was terminated on November 3, 2025. There were 367 weeks remaining in its ten-year term, a number greater than 104.

75.     Defendant RESTORE KANSAS CITY's Royalty Fee was 7.0% of all Gross Sales.

76.     Defendant RESTORE KANSAS CITY is therefore liable to FIC for payment of the liquidated damages amount of $11,830.50 multiplied by the Royalty Rate of 7.0% multiplied by 104, or the total sum of $86,126.04, as liquidated damages.

77.     Defendant RESTORE KANSAS CITY's Billing Fee paid to OWCP AR was 6.5% of all Gross Sales.

78.     Defendant RESTORE KANSAS CITY was also obligated to comply with in-term and post-termination provisions of the RESTORE KANSAS CITY Franchise Agreement pursuant to Articles 13.

79.     Upon information and belief, Defendant RESTORE KANSAS CITY violated its restrictive covenant against competition during the term of its franchise agreement by opening at least one new OWCP medical clinic in Colorado.

80.     Upon information and belief, Defendant RESTORE KANSAS CITY is in violation of its post-termination restrictive covenants, and is continuing to operate its former franchised location, using and disclosing Plaintiff FIC's confidential information and training, as well as operating at least one new OWCP medical clinic in Colorado.

81.     Plaintiff has a legitimate business interest in enforcing post-termination restrictive covenants against RESTORE KANSAS CITY, including the following:

a.  Protection of the goodwill associated with FIC's brand and trademarks;

b.  Protection of FIC's trade secrets and confidential information that may not otherwise qualify as trade secrets;

c.  The extraordinary and specialized training FIC provided to RESTORE KANSAS CITY;

d.  The loss of goodwill of existing and future patients and referral sources;

e.  The loss of the business opportunity for Plaintiff FIC to place a different, new franchisee in the same market or location; and

f.  The loss of franchisee stability, in that Defendant RESTORE KANSAS CITY's effort to terminate its franchise agreement with Plaintiff FIC and compete against it may induce or encourage other franchisees to follow suit or may discourage new franchisees from joining the franchise system.

82.     The restrictive covenants in RESTORE KANSAS CITY's Franchise Agreement are reasonably necessary to protect FIC's legitimate business interests. An inability to enforce reasonable post-termination restrictive covenants would enable franchisees to learn and benefit from all of FIC's trade secrets, confidential information and specialized training, then terminate the franchise agreement and essentially "steal" FIC's entire business model and system without paying fair or

agreed upon compensation to FIC for the use and benefit of that business model and system.

83.    Defendant RESTORE KANSAS CITY has failed to comply with other post-termination obligations set forth in Section 14.3 of the Kansas City Franchise Agreement, including but not limited to:

a.    Return to FIC the Operations Manual, all Confidential Information, and cease accessing them; and

b.    Assign to FIC Defendant's telephone numbers, domain names, email addresses or directory listings, used in connection with Defendant's operation of the franchised clinic.

84.    This unlawful competition has caused, and will cause Plaintiff FIC to suffer additional monetary damages, cause irreparable harm to its goodwill, reputation and brand, as well as to the value of its confidential information, and harms the franchise system as a whole by competing with, and diverting business and potential business from other franchisees of the Federal Injury Centers franchise system, and makes it more difficult for Plaintiff FIC to start a new franchised business in that same location or near it, and discourages new franchisees from joining FIC's system.

85.    Plaintiffs have retained the Gegan Law Office, PLLC to represent it in this action and are entitled to recover reasonable attorneys' fees and litigation costs to the full extent allowed under the law.

Wherefore, Plaintiffs FIC and OWCP AR seek monetary damages against RESTORE KANSAS CITY in the sum of $86,126.04 as liquidated damages; an amount to be determined at trial for damages resulting from breach of the billing agreement, and from violation of in-term and post-termination restrictive covenants, including disgorgement of all revenues or profits; and injunctive relief, including preliminary injunctive relief requiring Defendant RESTORE KANSAS CITY to comply with its post-termination obligations, including the restrictive covenants against competition, together with costs and attorneys' fees.

**COUNT IV**
**BREACH OF KANSAS CITY GUARANTY AGREEMENT WITH FIC**
**(Against the Pearson Defendants)**

86.　Plaintiff FIC repeats and realleges each and every material allegation set forth in Paragraphs 1 through 26 above and incorporates the same by reference.

87.　On or about November 15, 2022, Defendants TROY PEARSON and KENDRA PEARSON executed the Guaranty and Non-Compete Agreement (hereinafter "Kansas City Guaranty Agreement").

88.　The Kansas City Guaranty Agreement provides that Pearson Defendants were equity owners in RESTORE KANSAS CITY and were executing the Guaranty to induce Plaintiff FIC to enter into the RESTORE KANSAS CITY Franchise Agreement.

89.　The Kansas City Guaranty Agreement provides that the Individual Guarantors unconditionally guaranteed that RESTORE KANSAS CITY shall pay and perform all of obligations under the Kansas City Franchise Agreement, and

20

that the Pearson Defendants shall be personally bound and liable for such payments.

90.    The Kansas City Guaranty Agreement provides that the Pearson Defendants will not use FIC's Confidential Information other than in in the franchised business and shall prevent its unauthorized disclosure.

91.    The Kansas City Guaranty Agreement provides that the Pearson Defendants will not, directly or indirectly have any ownership interest in, lend money or provide financial assistance to, or provide any service to or be employed by any competitor, both during the term of the Kansas City Franchise Agreement and for a period of two years after its termination.

92.    Upon information and belief, the Pearson Defendants have continued to operate their franchised business at the same location and have an ownership interest in, or operated at least one other competitive business, using FIC's Confidential Information and specialized training, both during the term of the Kansas City Franchise Agreement, and after its termination, in violation of the Kansas City Guaranty Agreement.

93.    Plaintiff FIC has been damaged by RESTORE KANSAS CITY's breach of the RESTORE KANSAS CITY Franchise Agreement and by the Pearson Defendants' breach and continuinmg breach of the Kansas City Guaranty Agreement in a sum to be determined at trial.

94.    FIC has retained the Gegan Law Office, PLLC to represent it in this action and is entitled to recover reasonable attorneys' fees and litigation costs to

the full extent allowed under the law.

Wherefore, Plaintiff FIC seeks monetary damages in an amount to be determined at trial, and injunctive relief, including preliminary injunctive relief requiring Defendants TROY PEARSON and KENDRA PEARSON to comply with their post-termination obligations, including the restrictive covenants against competition, together with costs and attorneys' fees.

**COUNT V**
**MISAPPROPRIATION OF FIC'S TRADE SECRETS**
**DEFEND TRADE SECRETS ACT, 18. U.S.C. § 1836**
**(Against All Defendants)**

95.    Plaintiff FIC repeats and realleges each and every material allegation set forth in paragraphs 1 through 26 above and incorporates the same by reference.

96.    While Defendants operated the FIC franchises, Defendants had access to FIC's trade secrets, including—but not limited to—its specialized training for operation of an OWCP medical practice, methods, techniques, call or sales scripts, case management processes and procedures, coaching and advice, billing, training, billing processes and procedures (collectively "FIC Trade Secrets").

97.    FIC expended substantial time, effort, money, and resources in developing and maintaining the FIC Trade Secrets.

98.    FIC takes reasonable measures to maintain the confidentiality of the FIC Trade Secrets by requiring franchisees to sign franchise agreements and franchise owners to sign guaranty agreements containing confidentiality provisions which protect the FIC Trade Secrets, and keeping FIC's specialized

training password protected, and only accessible by Franchisees.

99.    The FIC Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

100.    FIC and its franchisees operate in a specialized market treating injured Federal workers covered under the OWCP.

101.    The national average for approval of claims for medical services submitted to OWCP for approval is less than 20%.

102.    The average approval rating for claims submitted to OWCP by FIC's franchisees is over 95%.

103.    The success seen by FIC's franchisees in treating and injured federal workers covered by OWCP and recovering payment for services is due primarily to FIC's Trade Secrets, a benefit that competitors do not have.

104.    FIC's Trade Secrets constitute trade secrets subject to protection under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§1836 and1839(3).

105.    The Defendants had a duty to maintain the secrecy of and not disclose or misappropriate FIC's Trade Secrets for their own benefit or for the benefit of another to the detriment of FIC and to return any trade secrets in their possession upon termination of the franchise agreements.

106.    The Defendants had actual knowledge of their duty to maintain the confidentiality of those FIC Trade Secrets they became aware of, or were disclosed

to them, during their association with FIC.

107.    Upon information and belief, the Defendants wrongfully misappropriated and/or disclosed the FIC Trade Secrets and used the confidential or proprietary information or trade secrets—without FIC's express or implied consent— to advance their own pecuniary interests in violation of the Agreements and/or Restrictive Covenants and the DTSA by operating at least one new location using the FIC Trade Secrets during the term of their franchise, and continuing to operate their OWCP clinics, and at least one additional OWCP clinic, after the termination of their franchises.

108.    Defendants have misappropriated FIC's trade secrets under 18 U.S.C.§1839(5).

109.    Unless the Defendants are permanently restrained and enjoined from using FIC's Trade Secrets, FIC will suffer irreparable injury, as the Defendants will continue to have access and the ability to make use of FIC's Trade Secrets for financial gain.

110.    As a direct and proximate result of the Defendants' misappropriation of FIC's Trade Secrets, FIC has suffered, and will continue to suffer, irreparable harm and economic damages, including—but not limited to—disruption of business, lost revenues and profits, incidental and consequential damage, actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.

111.    Upon information and belief, Defendants have unjustly enriched

themselves by misappropriation of FIC's trade secrets.

112.    Defendant were actually aware of a related lawsuit by Plaintiffs against Dynamic Health Carolinas, LLC, et al. pending in the United States District Court for the Middle District of Florida, case no. 8:25-cv-00166, and the issues raised therein.

113.    Defendants are liable to Plaintiff FIC for damages under 18 U.S.C. §1836 in a sum to be determined at trial for actual losses caused by Defendants' misappropriation, and for the unjust enrichment caused by such misappropriation, or alternatively imposition of a reasonable royalty for Defendants' misappropriation and unauthorized disclosure, and exemplary damages.

114.    Defendants' misappropriation of the FIC trade secrets was willful and malicious and Defendants should be made liable to Plaintiff FIC for exemplary damages in an amount not more than twice the amount of actual damages awarded.

115.    Plaintiffs have retained the Gegan Law Office, PLLC to represent it in this action and are entitled to recover reasonable attorneys' fees and litigation costs to the full extent allowed under the law.

WHEREFORE, Plaintiffs respectfully requests that this Court:

a)    Enter a preliminary and permanent injunction prohibiting the Defendants' use and disclosure of FIC's Trade Secrets;

b)    Enter judgment in favor of Plaintiff FIC and against Defendants;

c)      Award Plaintiff FIC damages to include actual damages and/or unjust enrichment caused by Defendants' misappropriation;

d)      Award FIC its attorneys' fees and costs as permitted by the DTSA;

e)      Award FIC exemplary damages as permitted by law;

f)      Award FIC prejudgment interest; and

g)      Grant such other and further relief as this Court deems just and proper.

**COUNT VI**
**MISAPPROPRIATION OF FIC'S TRADE SECRETS**
**FLORIDA UNIFORM TRADE SECRETS ACT**
**FL. STAT. §688.001 ET SEQ.**
**(Against All Defendants)**

116.    Plaintiff FIC repeats and realleges each and every material allegation set forth in paragraphs 1 through 26 above and incorporate the same by reference.

117.    While Defendants operated the FIC franchises, Defendants had access to FIC's trade secrets, including—but not limited to—its specialized training for operation of an OWCP medical practice, methods, techniques, call or sales scripts, case management processes and procedures, coaching and advice, billing training, billing processes and procedures (collectively "FIC Trade Secrets").

118.    FIC expended substantial time, effort, money, and resources in developing and maintaining the FIC Trade Secrets.

119.    FIC takes reasonable measures to maintain the confidentiality of the FIC Trade Secrets by requiring franchisees to sign franchise agreements and franchise owners to sign guaranty agreements containing confidentiality

provisions which protect the FIC Trade Secrets, and keeping FIC's specialized training password protected, and only accessible by Franchisees.

120. The FIC Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

121. FIC and its franchisees operate in a specialized market treating injured Federal workers covered under the OWCP.

122. The average approval rating for claims submitted to OWCP by FIC's franchisees is over 90%.

123. The success seen by FIC's franchisees in treating injured federal workers covered by OWCP is due primarily to FIC's Trade Secrets, a benefit that competitors do not have.

124. FIC's Trade Secrets constitutes trade secrets subject to protection under Florida's Uniform Trade Secrets Act, Fl. Stat. §§688.001 et. seq.

125. The Defendants had a duty to maintain the secrecy of and not disclose or misappropriate FIC's Trade Secrets for their own benefit or for the benefit of another to the detriment of FIC and to return any trade secrets in their possession upon termination of the franchise agreements.

126. The Defendants had actual knowledge of their duty to maintain the confidentiality of those FIC Trade Secrets they became aware of, or were disclosed to them, during their association with FIC.

127.   Upon information and belief, the Defendants wrongfully misappropriated and/or disclosed the FIC Trade Secrets and used the confidential or proprietary information or trade secrets—without FIC's express or implied consent— to advance their own pecuniary interests in violation of the Agreements and/or Restrictive Covenants and Florida's Uniform Trade Secrets Act, by operating at least one new location using the FIC Trade Secrets during the term of their franchise, and continuing to operate their OWCP clinics, and at least one additional OWCP clinics, after the termination of their franchises.

128.   Unless the Defendants are permanently restrained and enjoined from using FIC's Trade Secrets, FIC will suffer irreparable injury, as the Defendants will continue to have access and the ability to make use of FIC's Trade Secrets for financial gain.

129.   As a direct and proximate result of the Defendants' misappropriation of FIC's Trade Secrets, FIC has suffered, and will continue to suffer, irreparable harm and economic damages, including—but not limited to—disruption of business, lost revenues and profits, incidental and consequential damage, actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.

130.   Defendants were actually aware of a related lawsuit by Plaintiffs against Dynamic Health Carolinas, LLC, et al. pending in the United States District Court for the Middle District of Florida, case no. 8:25-cv-00166, and the issues raised therein.

131.    Defendants are liable to Plaintiff FIC for damages under Fl. Stat. §688.004 in a sum to be determined at trial for actual losses caused by Defendants' misappropriation, and for the unjust enrichment caused by such misappropriation.

132.    Defendants' misappropriation of the FIC trade secrets was willful and malicious and Defendants should be made liable to Plaintiff FIC for exemplary damages in an amount not more than twice the amount of actual damages awarded.

WHEREFORE, Plaintiffs respectfully requests that this Court:

a)    Enter a preliminary and permanent injunction prohibiting the Defendants' use and disclosure of FIC's Trade Secrets;

b)    Enter judgment in favor of Plaintiff FIC and against Defendants;

c)    Award Plaintiff FIC damages to include actual damages and unjust enrichment caused by Defendant's misappropriation;

d)    Award FIC exemplary damages as permitted by law;

e)    Award FIC prejudgment interest;

f)    Award FIC it's attorneys fees and costs as permitted under Florida's Uniform Trade Secrets Act; and

g)    Grant such other and further relief as this Court deems just and proper.

## COUNT VII
## UNJUST ENRICHMENT
## Against All Defendants

133.    Plaintiffs FIC and OWCP AR repeat and reallege each and every material allegation set forth in paragraphs 1 through 44 above and incorporate the same by reference.

134.    On June 16, 2025, Defendants RESTORE KANSAS CITY and RESTORE ST. LOUIS attempted to terminate their franchise agreements with Plaintiff FIC and their billing agreements with Plaintiff OWCP AR, alleging the Plaintiffs were in violation of the Federal Anti-Kickback Statute, without providing any further details, complaints or opportunity to cure or resolve Defendants' concerns.

135.    The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff.

136.    In the alternative to Counts I, II, III and IV, Plaintiffs may have no adequate remedy at law, in that FIC conferred a benefit on Defendants, and Defendants are continuing to benefit, and Plaintiffs have not received fair compensation for that benefit.

137.    Specifically, FIC conferred a benefit to Defendants by providing them with FIC's brand and trademarks; trade secrets; valuable confidential business information; extraordinary and specialized training; goodwill of patients and coaching.

138.    With FIC's Confidential Information and specialized training and coaching, Defendants opened two FIC franchises, set-up billing, accepted patients, and operated using FIC's franchise system, confidential information and training, which Defendants received from FIC, and are continuing to use without compensating FIC, including with at least one new OWCP clinic.

139.    Defendants voluntarily accepted and retained the benefits FIC conferred upon them.

140.    Under the circumstances, it would be inequitable and unjust for Defendants to retain these benefits without paying FIC the fair value of said benefits.

WHEREFORE, the Plaintiff FIC hereby requests this Court to enter judgment in its favor and against Defendants for compensatory damages, prejudgment interest, costs, restitution, the imposition of a constructive trust on amounts received by Defendants unjustly, and such other relief as this Court deems just and equitable.

## COUNT VIII
## DECLARATORY RELIEF THAT THE FRANCHISE AGREEMENT AND BILLING AGREEMENT ARE VALID AND ENFORCEABLE WITH FEDERAL INJURY CENTERS, LLC AND OWCP AR AND RECOVERY SPECIALISTS, LLC
## (Against All Defendants)

141.    Plaintiffs repeat and reallege each and every material allegation set forth in paragraphs 1 through 40 above and incorporates the same by reference.

142.    The Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). That language "has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995). Federal district courts are vested with such discretion "in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id*. at 289. A court should allow a declaratory judgment action to proceed where a declaration would "serve a useful purpose in clarifying and settling the legal relations in issue" and "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Mt. Hawley Ins. Co. v. Tactic Sec. Enforcement, Inc.*, 252 F. Supp. 3d 1307, 1309 (M.D. Fla. 2017). *See also Allstate Ins. Co. v. Employers Liability Assurance Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971) (declaratory judgment "is an all-purpose remedy designed to permit

an adjudication whenever the court has jurisdiction, there is an actual case or controversy and an adjudication would serve a useful purpose.").

143.    Under Chapter 86 of the Florida Statutes, "[a]ny person claiming to be interested or who may be in doubt about his or her rights" under a contract ... "may have determined any question of construction or validity ... and obtain a declaration of rights, status, or other equitable or legal relations thereunder." Fla. Stat. § 86.021. The purpose of the declaratory judgment chapter "is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed." Fla. Stat. § 86.101. Parties to a declaratory judgment action must "have or reasonably may have an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law." *Coalition for Adequacy & Fairness in School Funding, Inc. v. Chiles,* 680 So.2d 400, 404 (Fla. 1996). *See also Malowney v. Federal Collection Deposit Group,* 193 F.3d 1342, 1347 (11th Cir. 1999) (a claim for declaratory judgment is properly pled when it alleges facts showing that there is a "substantial continuing controversy between two adverse parties").

144.    Plaintiffs seek a declaratory judgment: (a) that the St. Louis Franchise Agreement is valid and enforceable; (b) that the St. Louis Billing Agreement is valid and enforceable; (c) that the Kansas City Franchise Agreement is valid and enforceable; and (d) that the Kansas City Billing Agreement is valid and enforceable.

145.    By letter dated June 16, 2025, Defendants RESTORE ST. LOUIS and RESTORE KANSAS CITY, and the PEARSON Defendants corresponded through counsel to Plaintiff FIC, alleging that FIC (and OWCP AR by implication) had breached the franchise agreements and billing agreements by violating the Federal Anti-Kickback Statute. A copy of the notice of alleged breach is attached as Exhibit "I."

146.    The notice of breach stated, in relevant part, as follows:

Specifically, FIC is in breach of Section 7.2 "Compliance with Law." The Franchise Agreements violate the Federal Anti-Kickback Statute. We also have concerns that the failure to disclose that the billing company, OWCPAR and Recovery Specialists, LLC has joint ownership with the same members of the FIC are in violation of the FTC Franchise Rules, 16 C.F.R. 436.5. By copy of this letter to WOCPAR, the intent is to terminate all billing agreements as well.

We request that your have your legal counsel contact us so that we can work towards either finding a cure by resolving our significant compliance concerns or my clients sending a final notice of termination in thirty days.

147.    On July 29, 2025, FIC's health care counsel corresponded in reply. A copy of the reply correspondence is attached as Exhibit "J."

148.    Subsequent discussions occurred to resolve the dispute between the parties, and although no agreement was reached, the Defendants did not issue a termination notice of either franchise agreement, they simply stopped paying the Royalty Fees, leading to Plaintiffs issuing a notice of breach and subsequent notices of termination, attached as Exhibits "E", "G" and "H" respectively.

34

149.   Plaintiffs have a bona fide, actual and present need for a declaration that its two franchise agreements, and its two billing agreements with Defendants do not violate the federal Anti-Kickback statute.

150.   There is a present controversy between Plaintiffs and Defendants regarding whether the two franchise agreements and the billing agreements violate the federal Anti-Kickback statute.

151.   Plaintiffs are entitled to a declaratory judgment that the St. Louis Franchise Agreement, St. Louis Billing Agreement, the Kansas City Franchise Agreement and the Kansas City Billing Agreement do not violate the federal Anti-Kickback statute.

152.   Plaintiffs and Defendants have present, actual, adverse and antagonistic interests in the validity and enforceability of the RESTORE Franchise Agreement and the RESTORE Billing Agreement, and the Defendants' duty to comply with their obligations under those agreements, including the post-termination restrictive covenants and confidentiality agreements.

153.   Plaintiffs' and Defendants' adverse and antagonistic interests are before this Court by proper process. The relief Plaintiffs' seek is not the mere rendering of legal advice.

154.   Plaintiffs have a bona fide, present and practical need for a declaration of their rights under the RESTORE Franchise Agreement and RESTORE Billing Agreement.

155.    Plaintiffs have retained Gegan Law Office, PLLC to represent them in this action and are required to pay them a reasonable fee for their services.

WHEREFORE, Plaintiffs requests that the Court enter a declaratory judgment that the St, Louis Franchise Agreement, the St. Louis Billing Agreement, the Kansas City Franchise Agreement and the Kansas City Billing Agreement do not violate the Federal Anti-Kickback Statute; together with an award of attorneys fees to the prevailing party as provided for in the agreements, and any other and further relief that the Court deems just, equitable and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand entry of judgment against Defendants for the following relief:

A.    Damages in favor of Plaintiffs FIC and OWCP AR against Defendant RESTORE ST. LOUIS on the First Cause of Action in a sum to be determined at trial, with pre and post judgment interest, costs and attorneys' fees;

B.    Preliminary and permanent injunctive relief on the First Cause of Action against RESTORE ST. LOUIS to compel compliance with post-termination obligations;

C.    Damages in favor of Plaintiff FIC and OWCP AR against the PEARSON Defendants  and the NEPUTE Defendants and on the Second Cause of Action in a sum to be determined at trial, with pre and post judgment interest, costs and attorneys' fees;

D.     Preliminary and permanent injunctive relief on the Second Cause of Action against the PEARSON Defendants and the NEPUTE Defendants to compel compliance with post-termination obligations;

E.     Damages in favor of Plaintiff FIC and OWCP AR against RESTORE KANSAS CITY on the Third Cause of Action in a sum to be determined at trial, with pre and post judgment interest, costs and attorneys' fees;

F.     Preliminary and permanent injunctive relief on the Third Cause of Action against Defendant RESTORE KANSAS CITY to compel compliance with post-termination obligations;

G.     Damages in favor of Plaintiff FIC against the PEARSON Defendants on the Fourth Cause of Action in a sum to be determined at trial, with pre and post judgment interest, costs and attorneys' fees;

H.     Preliminary and permanent injunctive relief on the Fourth Cause of Action against the PEARSON Defendants to compel compliance with post-termination obligations;

I.     Damages in favor of Plaintiff FIC against RESTORE KANSAS CITY, RESTORE ST. LOUIS, the PEARSON Defendants and the NEPUTE Defendants on the Fifth Cause of Action in a sum to be determined at trial, with pre and post judgment interest, costs and attorneys' fees;

J.     Preliminary and permanent injunctive relief on the Fifth Cause of Action against RESTORE KANSAS CITY, RESTORE ST. LOUIS, the PEARSON Defendants and the NEPUTE Defendants to compel compliance with post-

termination obligations;

K.     Damages in favor of Plaintiff FIC against RESTORE KANSAS CITY, RESTORE ST. LOUIS, the PEARSON Defendants and the NEPUTE Defendants on the Sixth Cause of Action in a sum to be determined at trial, with pre and post judgment interest, costs and attorneys' fees;

L.     Preliminary and permanent injunctive relief on the Sixth Cause of Action against RESTORE KANSAS CITY, RESTORE ST. LOUIS, the PEARSON Defendants and the NEPUTE Defendants to compel compliance with post-termination obligations;

M.     Damages in favor of Plaintiff FIC against RESTORE KANSAS CITY, RESTORE ST. LOUIS, the PEARSON Defendants and the NEPUTE Defendants on the Seventh Cause of Action in a sum to be determined at trial, with pre and post judgment interest, restitution, imposition of a constructive trust, costs and attorneys' fees;

N.     Declare that the St, Louis Franchise Agreement, the St. Louis Billing Agreement, the Kansas City Franchise Agreement and the Kansas City Billing Agreement do not violate the Federal Anti-Kickback Statute; together with an award of attorneys fees to the prevailing party as provided for in the agreement;

O.     For an accounting of Defendant's revenues and profits after November 6, 2024;

P.     For such other relief as to this Court seems just and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all issues so triable.


Dated: March 5, 2026                **/s/ Edmund J. Gegan**

EDMUND J. GEGAN, ESQ.
Florida Bar No.:  068822
MATTHEW L. SCHULIS, ESQ.
Florida Bar No.: 57116
GEGAN LAW OFFICE
1005 N. Marion Street
Floridan Legal Service Bldg.
Tampa, FL 33602
Telephone: (813) 248-8900
Facsimile: (727) 471-0616
Email: edmund.gegan@geganoffice.com
Email: matthew.schulis@geganoffice.com
Secondary: paralegal@geganoffice.com